UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) CAUSE NO.: 1:08-CV-82-TS<br>) |
| RENHILL GROUP INC. d/b/a<br>RENHILL STAFFING SERVICES, | )<br>)<br>) |
| Defendant. | ) |

# OPINION

This action was instituted by the Equal Employment Opportunity Commission (EEOC) against Defendant Renhill Group, Inc., to correct unlawful age and race discrimination, and retaliation. The parties entered a Consent Decree, which the Court approved preliminarily, and the Court conducted a hearing to determine the fairness of the proposed Consent Decree. For the reasons set forth in this Opinion and Order, the Court finds that the Consent Decree is lawful, fair, reasonable, and accurate.

# BACKGROUND

**A.     The Lawsuit**

The Defendant is an employment agency that procures employees for employers. On March 31, 2008, the EEOC sued the Defendant in federal court alleging that, since at least July 1, 2003, it engaged in lawful employment practices by denying referrals to applicants because of their race or age. The EEOC alleged that since at least July 1, 2003, the Defendant retaliated against Katie Griffin, Raylene Webb, and Brian Taylor because they opposed discriminatory

conduct. The EEOC additionally alleged that since at least May 2005, the Defendant violated the recordkeeping requirements of Title VII and the ADEA. Part of the relief requested by the EEOC was that the Defendant make whole those applicants who were denied referral due to race, and to pay liquidated damages to a class of applicants denied referral due to age.

B.  **The Consent Decree and Claims Process for Class Membership**

On the same date that the EEOC filed its Complaint, the parties filed a Joint Motion for Entry of a Consent Decree. The parties advised that they desired to resolve the matter without the burden and expense of further litigation, waived trial, briefs, arguments, findings of fact, and conclusions of law, and requested that the Court approve and enter a Consent Decree attached to their Motion.[1] On April 16, the Court granted preliminary approval to the proposed Consent Decree. The Consent Decree sets forth specific amounts in settlement of the claims involving Katie Griffin, Raylene Webb, and Brian Taylor. Part Four of the Consent Decree addressed Applicant Class Members. According to this section, Renhill was to pay $465,000 into a compensatory damages fund "to be distributed, at the discretion of the EEOC, and subject to a fairness hearing, to all applicant class members," who had been or would be identified by the EEOC in accordance with the definition of a class member provided in the Consent Decree. (Consent Decree, Section 401.) To allow the EEOC to identify potential applicant class members, the Consent Decree required that Renhill provide the EEOC with copies of applications and related documentation for all applicants who applied between July 1, 2003, and May 31, 2005, were African-American or at least forty years old, and were not placed by

---

[1] The Joint Motion was amended and refiled on April 16 because the original Motion failed to attach the Consent Decree.

Renhill. (Consent Decree, Section 404.) The EEOC would then mail claim forms to all individuals for whom Renhill produced an application as well as to any applicant whose application form contained a designation of "B" or an age identifier. (Consent Decree, Section 501.)

For purposes of the Consent Decree, the applicant class consisted of persons meeting the following criteria: (1) African American or age forty or older at the time of application; (2) applied to the Decatur or Fort Wayne office of Renhill between July 1, 2003, and May 31, 2005; (3) did not receive a referral from Renhill or turn a referral down; (4) filled out and returned a claim form to the EEOC by the designated due date; (5) completed all portions of claim form, including signature and witness signature; (6) provided good contact information to the EEOC; and (7) attended any interview determined necessary by the EEOC. Persons meeting this criteria were considered Class II class members. Such applicants would be elevated to Class I class member status if, in addition to meeting the six requirements above, their application contained a race or age-based notation that corresponded to the applicant's race or age, or they alleged direct evidence of discrimination on their claim form and attended an interview conducted by the EEOC. Fifteen individuals were already identified through the EEOC investigation as Class I class members at the time the Consent Decree was drafted.

At the conclusion of the claims process, the EEOC identified seventy-six individuals as meeting all the criteria for Class II membership, and proposed a $1,000 award for each Class II class member. These were the class members for which no direct evidence of discrimination existed. For the forty-three Class I class members identified by the EEOC, the proposed award was $9,046.51 per class member.

Each person who submitted a claim form received a Notification of Status, which contained the EEOC's determination of class membership and proposed monetary award. The Notification advised claimants that if they disagreed with the EEOC's determination, they had a specified date (four weeks from the Notification) by which to submit a letter to the Court indicating any disagreement with either their class status or proposed monetary award and their reasons for the objection.[2] The Consent Decree stated that the objection procedure was the sole means by which claimants or class members could challenge their class status, the handling of their claim, and their proposed monetary award.

**OBJECTIONS AND FAIRNESS HEARING**

The following eleven individuals filed timely written objections to the Consent Decree: Wayne Earl Bates; James Charleton; Linda Masterson; Kevin Rosse; Luke Stevenson; Tywan Swift; Demonte Woodhouse; Melvin K. Wortham; Pamela Ineichen; Bonita Powell; andYvette Meeks. Three of these individuals (Pamela Ineichen, Bonita Powell, and Yvette Meeks) appeared at the fairness hearing held by this Court on April 16, 2009. Ms. Ineichen, who was named in the Consent Decree as a Class I class member, stated at the hearing that she did not have an objection and agreed with the EEOC's determination. This was consistent with her letter to the Court, which simply asked that the proposed award not be reduced.

Before addressing the remaining written objections, including those of Ms. Powell and Ms. Meeks, the Court notes that three non-objecting individuals appeared at the fairness hearing. These individuals stated that they agreed with the EEOC's determination: (1) James Capers III,

---

[2] The Notification provided the wrong address for the Court. As all objection letters also had to be sent to the EEOC, it was able to forward these objections to the Court.

4

designated as a Class I class member entitled to the same proposed award of $9,046.52 offered to other Class I class members; (2) Michael Logan, who was named in the Consent Decree as a Class I class member, and was subject to the proposed award of $9,046.52; and (3) Thomas A. Brooks, also named in the consent decree as a Class I class member and offered a proposed award of $9,046.52.

At the hearing, the EEOC presented the testimony of Monica Guest, a paralegal specialist and the EEOC's Settlement Administrator. For each individual objector, Guest authenticated his or her claim form, if one was submitted, and the EEOC Notification of Status. Guest also testified regarding any other contact she had with the objecting parties.

### A.    Wayne Earl Bates

The EEOC determined that Mr. Bates was not a class member because his claim form was untimely, and, even if it was timely, it indicated that he received one or more referrals. Mr. Bates's objected on the basis that his claim was only untimely because he was incarcerated at the time the EEOC's letter was mailed, and that by the time he received the letter, he could not meet the deadline.

The Court finds that the EEOC properly determined that Mr. Bates does not meet the criteria of a class member because, regardless of his reason for failing to meet the filing deadline, his claim form indicates that he received work through Renhill. (Hr'g. Ex. 3.)

### B.    James Charleton

The EEOC determined that Mr. Charleton was not a class member because his claim

form did not contain the required witness signature. Mr. Charleton's objection stated that he thought the witness signature was something that "your office" would do. (DE 16.) It was not clear in the letter whether the reference to "your office" was directed to the EEOC or to the Court. The EEOC did not change its determination on the basis of this objection. The EEOC denied all claims that did not contain the proper signatures.

The Court finds that the EEOC properly determined that Mr. Charleton was not a class member on the basis that he did not provide the proper witness signature. The Claim Form advised the claimants to read all instructions carefully because the ability to be considered for participation in the suit was "dependent upon a timely properly completed claim form." (Consent Decree, Ex. F.) One of the instructions provided: "You must sign the certification on page 5 and have a witness sign as well." (*Id.*) The signature requirements serve an important purpose, and the EEOC was fair and consistent in its adherence to the signature requirements.

C.     **Linda Masterson**

The EEOC made no determination for Ms. Masterson because, although it sent her a blank claim form, it did not receive a completed claim form. In Ms. Masterson's objection, she claims that she submitted a completed claim form, but that the EEOC did not receive it. She contends that the EEOC did not send another form despite her numerous requests for one. Ms. Masterson states that she applied at Renhill and did not get a job, but that she does not remember the date that she completed the application.

The EEOC's records reveal that Ms. Masterson called the EEOC on August 21, 2008, one day before the deadline to file her claim, and left a voicemail asking what Renhill was.

When Guest returned her call, Ms. Masterson told Guest that she returned the claim form. Guest told Ms. Masterson that the EEOC had not received her claim and then answered her other questions.

On March 20, 2009, Ms. Masterson called and left a message concerning the status of her claim because she had not heard from the EEOC. On March 23, Guest returned her call, and Ms. Masterson claimed that she sent the form on August 18 so she would meet the August 22 deadline. Ms. Masterson also stated that she called the EEOC two to three times and left messages, that the EEOC called her back and promised to send another form. Guest informed Masterson that she was not considered a class member because the EEOC never received a completed form and then advised her of the objection process and the fairness hearing date. Guest concluded that Ms. Masterson did not return a claim form and was being untruthful about sending the form on August 18 because, as of August 21, Ms. Masterson did not know what Renhill was. Additionally, the EEOC had no record of any requests from Ms. Masterson for a second form.

The Court finds that the EEOC's determination that Ms. Masterson did not submit a claim form is supported by the evidence in the record. It was not unreasonable for the EEOC to conclude that she did not mail a form on August 18 when she indicated in a telephone message to the EEOC on August 21 that she did not know what Renhill was. It would not be possible to answer the questions on the claim form without knowledge that Renhill was an employment agency to which she applied for work. Moreover, the evidence does not support Ms. Masterson's claim that she requested another claim form when she learned that the EEOC did not have one for her, or that she left two to three messages with the EEOC before talking to Guest in March

2009.

**D.     Kevin Rosse**

The EEOC determined that Mr. Rosse was a Class II class member because there was no direct evidence of discrimination or a marked application. His proposed award of $1000 was the same award proposed for the other Class II class members. Mr. Rosse's objection is that his award should be more because it does not adequately represent his earning potential.

There is nothing in the Consent Decree that allows the EEOC to distinguish members within the same class on the basis of their earning potential. Therefore, the EEOC's determination was proper. To the extent that Mr. Rosse's argument can be considered a claim that the Consent Decree is not fair, the Court will address this issue later in this Opinion.

**E.     Luke Stevenson**

The EEOC determined that Mr. Stevenson was a Class II class member. His application was not marked and there was no direct evidence of discrimination cited on the claim form. Mr. Stevenson's proposed award, consistent with other Class II class members, is $1000. Mr. Stevenson' s objection is that the amount should be more because the discrimination affected his family when he was prevented from providing for them.

The EEOC's determination will stand. There is nothing in the Consent Decree that allows the EEOC to distinguish members within the same class on the basis of the effects of the discrimination. All Class II class members receive the same award on the presumption that discrimination may have had some bearing on Renhill's actions and had some impact on the

class members.

**F.     Tywan Swift**

The EEOC determined that Mr. Swift was a Class II class member. There was no marked application or direct evidence of discrimination cited on his claim form. In his letter to EEOC, Mr. Swift states that he accepts the EEOC's determination. Thus, the Court does not consider this an objection to the award, and Mr. Swift will remain a Class II class member.

**G.     Demonte Woodhouse**

The EEOC determined that Mr. Woodhouse was not a class member. Mr. Woodhouse's claim form suggested that he did not meet the criteria for class membership because he received work through Renhill. However, because the EEOC had a marked application for Mr. Woodhouse, the EEOC required him to attend an interview to get more information to make a determination. Mr. Woodhouse failed to attend the interview despite numerous attempts by the EEOC to notify Mr. Woodhouse, using contact information he provided on his claim form. When Mr. Woodhouse did not attend the interview, the EEOC made its determination using the claim form as the best information that it had.

The Court finds that it was proper and reasonable for the EEOC to deny Mr. Woodhouse class status under the circumstances set forth above. The only information provided by Mr. Woodhouse supported its determination that he did not meet the class criteria.

## H. Melvin K. Wortham

The EEOC determined that Mr. Wortham was a Class I class member because his claim cited direct evidence of discrimination. His proposed award is the same as other Class I class members. Mr. Wortham wrote the Court requesting that the United States Marshal Service provide him with transportation from the Allen County Jail to attend the fairness hearing. However, his letter does not express any disagreement with the EEOC's determination.

The Court did not have the authority to direct the United States Marshals to transport Mr. Worthman to court for the civil proceeding. *See Penn. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34 (1985) (holding that no statute existed to confer authority upon district court to order the Marshals to transport state prisoner to and from federal courthouse in connection with federal litigation). In any event, Mr. Wortham is a Class I class member and his letter did not express any disagreement with the EEOC's conclusion. This determination will stand.

## I. Bonita Powell

The EEOC did not make any determination for Ms. Powell because Renhill did not provide her name as a person who applied during the relevant time period. Ms. Powell contacted the EEOC objecting that she should be a class member because she worked for Renhill around 2005. Guest testified that if Ms. Powell had filed a claim form, she would not have qualified as a class member because she actually received a referral from Renhill.

Ms. Powell testified at the fairness hearing that she worked for Renhill, admitted that she received work in 2005 and 2006, but said she was also turned down for work a few times when she went there and called. Ms. Powell did not know the actual dates when she applied to Renhill

and was receiving work through Renhill. The EEOC submitted a paystub into evidence for Ms. Powell, which revealed that she worked for Renhill in 2006. Ms. Powell had previously provided this paystub to the EEOC, but did not bing it to the hearing. Ms. Powell acknowledged the 2006 date as showing that she worked through Renhill in 2006, but said she still did not know when she applied.

The Court affirms the EEOC's determination that Ms. Powell is not a class member. She does not present any evidence that she applied to Renhill between July 1, 2003, and May 31, 2005, and she knew of no reason why Renhill would not have a record of her application between these dates if it indeed existed. In addition, the evidence confirms that Ms. Powell received a referral from Renhill.

### J.     Yvette Meeks

Ms. Meeks filed an objection as a Class II class member because she believes her award should be more than $1000. The EEOC determined that Ms. Meeks was a Class II class member because her claim form contained no direct evidence of discrimination, but she applied during the relevant time period and met the other criteria for Class II membership.

During the fairness hearing, Ms. Meeks testified that she applied twice to Renhill. The first time she was not called. The second time, she called Renhill and found out they were hiring for the shift that she needed. A Renhill employee told Ms. Meeks to come to its office to update her application. When she got there, Renhill's hiring status appeared to change because it did not give her any tests and did not contact her. She believes that because she acted on the company's statement to her that it was hiring, that she should get more than $1,000 for her trouble.

The Court finds that Class II membership was the appropriate and fair determination for Ms. Meeks. Although the scenario described by Ms. Meeks may present a stronger circumstantial case of discrimination than some of the other Class II class members, she does not have direct evidence of discrimination that would make her a Class I class member. The Consent Decree does not create a separate category for applicants who were told that Renhill was hiring prior to Renhill failing to make a referral. Therefore, the EEOC properly determined her to be in the same position as other Class II class members.

## APPROVAL OF CONSENT DECREE

Voluntary settlements of class action disputes are favored, particularly in Title VII cases where Congress has expressed its preference for settlement. *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884 888–89 (7th Cir. 1985). Before a court can approve a class action settlement, it must determine that the settlement is lawful, fair, reasonable and adequate. *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996); *Hiram Walker & Sons*, 768 F.2d at 889; *Gautreaux v. Pierce*, 690 F.2d 616, 631 (7th Cir. 1982); *Armstrong v. Bd. of Sch. Directors*, 616 F.2d 305, 313 (7th Cir. 1980). Among the factors that a court should consider in making this "fairness" determination are: the strength of the plaintiffs' case compared to the defendants' offer; the likely length, complexity and expense of further litigation; the amount of opposition to the settlement among affected parties; the opinion of competent counsel; and the stage of the proceedings and the amount of discovery already completed. *Isby*, 75 F.3d at 1199; *Hiram Walker & Sons*, 768 F.2d at 889; *Armstrong*, 616 F.2d at 314. In considering a proposed class action settlement, a court may either approve or disapprove of the settlement; it may not rewrite

the parties' agreement. *Armstrong*, 616 F.2d at 315. A court "may not deny approval of a consent decree unless it is unfair, unreasonable, or inadequate." *Hiram Walker & Sons*, 768 F.2d at 889.

In this case, nothing suggesting illegality or unconstitutionality is apparent on the face of the proposed Consent Decree and no party has suggested otherwise. The Court finds that the Consent Decree is lawful.

The Court also finds the Consent Decree to be fair. The largest award are reserved for those applicants with the strongest potential cases against Rehnill as determined by the EEOC's investigation and the claims process. The claimants with direct evidence of discrimination will get a higher award than those who would have to convince a jury of Renhill's unspoken motive and establish causation. The likely length, complexity, and expense of further litigation militates strongly in favor of approval of the proposed consent decree. The resolution of the EEOC's claims at this point through the proposed Consent Decree will result in considerable savings in time and expense. The Consent Decree represents an outcome at least comparable, if not far superior, to that which the applicants class members might achieve by proceeding to trial.

The low level of opposition to the settlement among affected parties also favors approval. Indeed, opposition to the proposed consent decree is limited. There are 43 Class I class members and 76 Class II class members. Only 8 people filed what the Court considers an objection to the EEOC's findings. Most of those were the result of the objector's limited understanding of the Consent Decree process and intended purpose.

The settlement requires Renhill to pay $465,000 in compensatory damages. This is an adequate amount to pay all applicant class members a fair award, as nearly $10,000 is proposed for those applicants with the strongest cases. The proposed award of $1000 for each class

member who does not have any direct evidence to support a finding that Renhill discriminated against him or her is also fair and reasonable. Although this may be less than some of those class members may have received if they were successful after a full-length litigation process and trial, this must be balanced against the timeliness of their recovery and the potential for no recovery without the current settlement. These class members gain the benefit of resolution and some measure of vindication for their position without the time and expense of trial and the potential of no recovery. The essence of a fair settlement is compromise. *See Hiram Walker & Sons,* 768 F.2d at 889.

Moreover, the parties entered the Consent Decree after an extended prelitigation investigation and negotiation process. Further discovery, which was expedited through the Consent Decree and the claims process, has demonstrated that the proposed settlement is fair, reasonable, and adequate.

Therefore, taking into account the consideration set forth in the Consent Decree, the possible defenses that could be asserted by Renhill, and the risks of further litigation, the Consent Decree is lawful, fair, reasonable, and adequate. The parties may now move for final approval of the Consent Decree and a judgment implementing its terms.

ENTERED: June 5, 2009.

                                            s/ Theresa L. Springmann
                                            THERESA L. SPRINGMANN
                                            UNITED STATES DISTRICT COURT